UNITED STATES DICTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
LOUIS DIEZ,

                          Plaintiff,          MEMORANDUM & ORDER
                                              09-CV-2390(JS)(WDW)
          -against-

WASHINGTON MUTUAL BANK,

                          Defendant.
---------------------------------------X
APPEARANCES:
For Plaintiff:     Louis Diez, pro se
                   25 South 2nd Street
                   Bethpage, NY 11714

For Defendant:     Justin F. Capuano, Esq.
                   Cullen and Dykman, LLP
                   100 Quentin Roosevelt Boulevard
                   Garden City, NY 11530

SEYBERT, District Judge:

          Presently pending before the Court are the following

motions filed by pro se Plaintiff Louis Diez: (1) a motion for

joinder, filed on September 14, 2010 (Docket No. 36); (2) a

motion to amend/correct/supplement the Complaint, filed on

December 16, 2010 (Docket No. 51); (3) a motion requesting

copies of all court transcripts, filed on April 13, 2011 (Docket

No. 77); (4) a motion for reconsideration of the Court's Order

denying the appointment of counsel, filed on May 26, 2011

(Docket No. 88); (5) a motion for "clarification" of the Court's

prior orders denying consolidation, filed on August 18, 2011

(Docket No. 98); and (6) an appeal of Magistrate Judge William

D. Wall's Order closing discovery and denying Plaintiff's motion to compel, filed August 26, 2011 (Docket No. 99).

Also pending is a motion of Defendant JPMorgan Morgan Chase Bank s/h/a Washington Mutual Bank ("Defendant" or the "Bank") for summary judgment, filed on May 13, 2011. (Docket No. 83.)

For the following reasons, all of Plaintiff's requests are DENIED, and the Court RESERVES JUDGMENT on Defendant's motion for summary judgment.

I.   Motions to Amend the Complaint

    A.   Procedural Background

Plaintiff commenced this action against the Bank on May 27, 2009 alleging that he "was repeatedly supplied with false material and oral misrepresentation (fraud) and/or misstatements by Washington Mutual (WaMu) when trying to refinance his current two mortgage loans." (Compl. ¶ III(f), Docket No. 1.) In his original Complaint, Plaintiff also makes allegations against the "seller and seller's parties" in connection with the purchase of his home in 2005. (Compl. ¶ III(a)-(e).) Neither the seller, who is never named or otherwise identified in the Complaint, nor any of the "seller's parties" are named as Defendants in the original Complaint. On March 19, 2010, the Bank filed its Answer, which raised, among

other defenses, failure to join the FDIC, a necessary party. (Docket No. 14.)

Plaintiff submitted two letters to the Court on July 13 and 20, 2010, respectively, informing the Court that he intends to amend the Complaint to add the FDIC and others as defendants and seeking an extension of time to do so. (Docket Nos. 28, 34.) Judge Wall, in his July 22, 2010 Scheduling Order, gave the parties until December 16, 2010 to move to join new parties or otherwise amend the pleadings. (Docket No. 27.)

On September 14, 2010, Plaintiff filed a "[m]otion to join parties (Defendants) with additional complaints at the end" ("First Proposed Amended Complaint" or "FPAC"). (Docket No. 36.) Although labeled as a motion, the filing contains only a proposed amended complaint, with no accompanying motion or memorandum in support. The Bank filed its opposition to Plaintiff's "motion" on September 17, 2010, arguing that the FPAC must be denied because it would be subject to dismissal under Federal Rule of Civil Procedure 8. (Docket No. 38.)

On December 16, 2010, Plaintiff submitted another amended complaint titled, "Complaint and Summons (piggyback to Civil Action No. 09-cv-02390-JS)" ("Second Proposed Amended Complaint" or "SPAC"). (Docket No. 51.) Defendant filed its opposition on December 30, 2010, again arguing that the SPAC must be denied for violating Rule 8. (Docket No. 55.) The

3

Second Proposed Amended Complaint is nearly identical to the First, with two minor differences: <u>first</u>, the SPAC adds an additional two Defendants (SPAC at 1-2); and <u>second</u>, the SPAC adds a forty-second count for defamation of character (<u>id.</u> at 66). Since, in all other regards, the two proposed amended complaints are word-for-word identical (albeit, sometimes in a slightly different order), the Court presumes that the SPAC supersedes the FPAC,[1] and DENIES AS MOOT Plaintiff's first motion to amend (Docket No. 36). For the reasons that follow, Plaintiff's second motion to amend is also DENIED.

   B.   <u>Legal Standard</u>

      1.   <u>Federal Rule of Civil Procedure 15</u>

      Federal Rule of Civil Procedure 15 governs amendments to pleadings. A party may amend his pleading once as a matter of right within twenty-one days after service of that pleading or, if the pleading requires a response, within twenty-one days after he is served with his adversary's response or a motion under Federal Rule 12(b), (e), or (f). FED. R. CIV. P. 15(a).

---

[1] <u>See Gero v. Hoffman</u>, No. 07-CV-0103, 2007 WL 4532000, at *1 n.1 (D. Vt. Dec. 18, 2007) (presuming that most recent motion to amend the complaint supersedes any prior motions to amend); <u>cf.</u> <u>Arce v. Walker</u>, 139 F.3d 329, 332 n.4 (2d Cir. 1998) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.") (quoting <u>Int'l Controls Corp. v. Vesco</u>, 556 F.2d 665, 668 (2d Cir. 1997)); <u>Shields v. Citytrust Bancorp, Inc.</u>, 25 F.3d 1124, 1128 (2d Cir. 1994) (same).

All other amendments require either written consent from the other party or the Court's leave.  Id.

Plaintiff is well outside the time during which he could have amended his Complaint as a matter of right, and Defendant does not consent to the amendment, so the issue here is whether justice requires permitting Plaintiff to amend his pleading.   Leave to amend should be liberally granted, particularly to pro se litigants.   See Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).   Notwithstanding Plaintiff's pro se status, however, "where the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied."   Schwamborn v. Cnty. of Nassau, 348 Fed. Appx. 634, 635, (2d Cir. 2009) (quoting Hayden v. Cnty. of Nassau, 180 F.3d 42, 53 (2d Cir. 1999)).   In this case, the Bank argues that Plaintiff's SPAC is futile because it violates Federal Rule of Civil Procedure 8.   The Court agrees.

### 2.   Federal Rule of Civil Procedure 8

Rule 8 provides that a complaint shall contain "a short and plain statement showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).   "The statement should be plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for

trial." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citing Geisler v. Petrocelli, 616 F.2d 636, 640 (2d Cir. 1980)). "The statement should be short because unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." Id. (internal quotation marks and citation omitted).

"A complaint fails to comply with Rule 8(a)(2) if it is 'so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised." Struck v. U.S. House of Representatives, 68 Fed. Appx. 233, 235 (2d Cir. 2003) (quoting Salahuddin, 861 F.2d at 42); accord Prezzi v. Berzak, 57 F.R.D. 149, 151 (S.D.N.Y. 1972) ("Complaints which ramble, which needlessly speculate, accuse, and condemn, and which contain circuitous diatribes far removed from the heart of the claim do not comport with these goals and this system; such complaints must be dismissed."); see also, e.g., Roberto's Fruit Market, Inc. v. Schaffer, 13 F. Supp. 2d 390, 395-96 (E.D.N.Y. 1998) (dismissing 71-page, 284 paragraph complaint for being "excessively long-winded and redundant" and for containing "unnecessary, vague and inflammatory language"); Infanti v. Scharpf, No. 06-CV-6552, 2008 WL 2397607, at *2 (E.D.N.Y. 2008) (dismissing a 90-page, 500-paragraph complaint described as a

"chaotic jumble" of "tumultuous confusion" full of "rambling accusations and moral condemnation.")

    C.   <u>Second Proposed Amended Complaint</u>

    It is clear that Plaintiff's SPAC fails to comply with Rule 8. The SPAC spans seventy, single-spaced pages, names eight Defendants,[2] and fails to link any of these Defendants to any of the forty-two counts alleged.[3] This alone justifies denying the motion to amend.

    "A plaintiff fails to satisfy [R]ule 8, where the complaint lumps all the defendants together and fails to distinguish their conduct because such allegations fail to give adequate notice to the defendants as to what they did wrong." <u>Appalacian Enters., Inc. v. ePayment Solutions, Ltd.</u>, No. 01-CV-11502, 2004 WL 2813121, at *7 (S.D.N.Y. Dec. 8, 2004) (internal quotation marks and citations omitted). "It is not the duty of Defendants or this Court to sift through the Complaint and guess

---

[2] Among the named Defendants are the "United States Government and/or Private biased self-policing Agencies/Institutions enforced by the United State Courts and/or United States Laws or directives/statutes/and the like" and "OTHER RELATED ENTITIES (Said name being fictitious, it being the intention of Plaintiff to designate any and all related parties, corporations, government entities, self-policing agencies, real human owners of private government entities, if any, having an interest in these alleged fraudulent actions)." (SPAC at 1.)

[3] The SPAC states: "With the statement of facts (with some of the supporting evidence) above the ARGUMENTS, Louis Diez's argument is that some or all of the parties are liable for the following counts below . . . ." (SPAC at 64 ¶ 67.)

which factual allegations support their claims." <u>Infanti</u>, 2008
WL 2397607, at *2 (internal quotation marks and citation
omitted). Rather, "Rule 8(a) places the burden squarely upon
the plaintiff to clearly and succinctly state its claims." <u>Id.</u>
(internal quotation marks and citation omitted). Plaintiff
failed to satisfy this burden.

Aside from failing to set forth "a short and plain
statement of the claim," the SPAC includes a host of unnecessary
and irrelevant information--information that should never be
included in a pleading. For example, the SPAC contains the
following discovery request:

> Plaintiff demands to be provided with
> (limited to Plaintiff's note and mortgage)
> "the agreements, instruments, certificates
> or other documents . . . evidencing or
> otherwise relating to, governing or executed
> in connection with or as security for a
> Loan, including without limitation notes,
> bonds loan agreements, letter of credit
> applications, lease financing contracts,
> banker's acceptances, drafts, interest
> protection agreements, currency exchange
> agreements, repurchase agreements, reverse
> purchase agreements, deeds of trust,
> mortgages, assignments, security agreements,
> pledges, subordination or priority agree-
> ments, lien priority agreements, under-
> takings, security instruments, certificates,
> documents, legal opinions (Plaintiff is
> really interested in this documents,
> especially as it related [sic] his ongoing
> complaints with Washington Mutual Bank and
> its regulators), participation agreements
> and intercreditor agreements, and all amend-
> ments, modifications, renewals, extensions,
> rearrangements, and substitutions with

respect to any of the foregoing" fraudulent
and forged mortgage for Louis Diez.

(SPAC at 3 ¶ b.)  Similar requests for documents or answers to

interrogatories are sprinkled throughout the SPAC.  (See, e.g.,

SPAC at 7-12, 16-18, 51-52.)[4]  There are also full copies of

newspaper articles and press releases, including images and

logos, that Plaintiff appears to have copied and pasted directly

from news websites;[5] text of the U.S. code copied and pasted from

Cornell Law School's website (see, e.g., id. at 24-28 (quoting

12 U.S.C. §§ 1833, 1831k, 1831l)); links to websites with no

explanation other than the directive that the Court "[k]indly

reference" them (id. at 5, 31);[6] docket entries or docket text

for other cases (id. at 15 (screen shot of docket for case

number 09-CV-0533)).  There are also requests for the Court to

---

[4] The Plaintiff is well-aware that discovery requests and
responses are not to be filed with the Court (Notice, Feb. 24,
2011, Docket No. 67) and that including them in his amended
complaint is improper (Order, November 29, 2010, Docket No. 46).

[5] For example, the SPAC includes word-for-word copies of a
November 1, 2007 press release from the Office of the New York
State Attorney General titled "NY Attorney General Sues First
American and its Subsidiary for Conspiring with Washington
Mutual to Inflate Real Estate Appraisals" (SPAC at 37-39), and a
January 22, 2008, New York Times article titled "If Everyone's
Finger-Pointing, Who's to Blame" (id. at 39-41).

[6] See also id. at 62-63 ¶ 58 (list of websites "which were all
experiencing errors on July 18, 2010 so he could not include the
exact details").

subpoena certain parties or documents,[7] and other miscellaneous requests such as that "this court case be televised globally" (SPAC at 63 ¶ 63), "permission to add more complaints during the discovery process" (id. at 63 ¶ 64), and requests to consolidate this matter with cases pending in other jurisdictions (id. at 5-6, 12-13, 15-16, 33, 63).[8]

Also adding to the excessive length of the SPAC are rambling accusations, rants and anti-government conspiracy theories.  For example, the SPAC states:

> Louis Diez (Plaintiff) requests explanation why unconstitutional laws were passed to fraudulently cement in the Federal Reserve and other unneeded or self-policing entities.  Louis Diez demands audits to all the financial and policing entities, including but not limited to, the FRB (Federal Reserve Board) and IRS, to ensure the data reported to the public has always been true and transparent.

(SPAC at 63 ¶ 66.)[9]

---

[7] For example, Plaintiff "requests Court to subpoena his complaint and correspondence with [the] Department of State on this particular Bethpage house purchase" (SPAC at 20 ¶ 24), and "requests subpoena of Washington Mutual Bank's records" (id. at 21 ¶ 27).

[8] Plaintiff's requests to consolidate are problematic for other reasons to be discussed infra.

[9] The SPAC also states:

> Louis Diez, Plaintiff demands to know why the general public, including but not limited to himself, have [sic] to pay taxes to the Internal Revenue Service (IRS) for

Even removing the superfluous material, which comprises a majority of the SPAC, it is utterly incomprehensible.  Plaintiff appears to be confusing the present matter with matters pending in other jurisdictions:  the SPAC frequently refers to the Defendants as the "foreclosure Plaintiff" (see, e.g., SPAC at 49 ¶¶ 21-23, 50 ¶ 25), often refers to Louis Diez as the Defendant (see, e.g., id. at 44 ¶ 3), asserts affirmative defenses to a pending foreclosure action (see, e.g., id. at 44-61), and alleges wrongful conduct by individuals and entities not named as Defendants in the original Complaint or either of the proposed amended complaints.[10]  In

---

labor when laws explicitly state that taxes only need to be paid on profits and gains.

(SPAC at 63 ¶ 65.) And, "Why doesn't the FDIC have to be held liable for its wrongdoings and everyone else, including government or any agency or political subdivision thereof...?" (Id. at 3 ¶ e (ellipsis in original).)

[10] For example:

Louis Diez was drawn into false belief through fraud in a factum that the property being purchased . . . was in good condition (false advertisement by Realtor: Century 21 Metro Realty . . . , real estate agent: Cheryl Casale, Appraisal Company, Rapid Appraisals & MacKinney . . . whose appraisal assistant was seller's (Helen Smith) son's (Robert Smith) friend unbeknownst to all except the seller's parties. . . . Sellers who fail to be forthright with prospective buyers risk a range of penalties including: civil lawsuits, monetary damages, cancelled

addition, the SPAC often repeats entire paragraphs verbatim for no reason[11] and jumps from numbered paragraphs to lettered paragraphs back to numbered paragraphs without order or reason.[12] And on at least one occasion the pages appear to have been filed out-of-order. (SPAC at 3-5.)

Finally, Plaintiff failed to seek leave to file an amended complaint as required under Rule 15; instead, he simply submitted a "piggyback" complaint without explaining why he should be granted permission to file and serve it. See Williams v. Scully, 1991 U.S. Dist. LEXIS 18045, at *1 (S.D.N.Y. Dec. 18, 1991).

Requiring Defendants to answer the SPAC would "fly in the face of the very purposes for which Rule 8 exists," Lonesome v. Lebedeff, 141 F.R.D. 397, 398 (E.D.N.Y. 1992); as such, Plaintiff's motion to amend is DENIED. However, given the Plaintiff's pro se status, the motion is denied WITHOUT

---

deals, lost market time and property stigmatization.

(SPAC at 19 ¶ 20; see also id. at 28 ¶ 38.)

[11] For example, paragraphs 8, 9, and 20 on page 4 of the SPAC appear again on pages 30 to 31, and an email appearing on page 6 is repeated in its entirety on page 15.

[12] For example, paragraph 3, which contains sub-paragraphs (a) through (f), is followed by paragraphs 8 and 9. The next paragraph, paragraph 20, contains sub-paragraphs (g) through (v) and is followed by paragraphs 4 through 6. (SPAC at 3-12.) The entire SPAC continues in this fashion.

PREJUDICE with leave to file a new motion to amend within thirty [30] days of the date of this Order.  Plaintiff is advised that (1) any proposed amended complaint must be short and plain, must clearly state which counts are against which defendants, must include enough factual allegations to support a plausible claim, and must not include any of the superfluous material explained above;[13] and (2) Plaintiff must explain, in a separate document, why he should be allowed to file an amended complaint.  Any motion that does not comply with the above-directive will be denied.

II.  <u>Request for Fee Waiver for All Court Transcripts</u>

     Plaintiff has also requested that he be provided with copies of transcripts from "all pretrial and trial proceedings" free of charge.  (Docket No. 77.)  Although Plaintiff qualifies for <u>in forma pauperis</u> status, he is not entitled to a fee waiver for copies of transcripts at this time.  <u>First</u>, Plaintiff is seeking copies of transcripts that do not exist:  This case has yet to be tried so there are no trial transcripts.  In this respect, his request is premature.  <u>Second</u>, Plaintiff has failed to explain why he needs copies of any of the pretrial transcripts, let alone all of them.  Plaintiff received copies

---

[13] This includes, but is not limited to: requests, demands or questions of any kind; references to or copies of news articles; hyperlinks; full text of statutes; and copies of or reference to documents filed in other matters.

of all orders and rulings in this case, and he participated in
and had the opportunity to take notes at all pretrial
proceedings.  As such, his request for copies of all present and
future transcripts is DENIED.  If Plaintiff wishes, he may
purchase copies of any and all transcripts from the court
reporter.

III. <u>Reconsideration of Order Denying Appointment of Counsel</u>[14]

Also pending is Plaintiff's "Reconsideration to
Application for the Court to Request <u>Pro</u> <u>Bono</u> Counsel." (Docket
No. 88.)  It is unclear whether Plaintiff is asking the Court to
reconsider its May 19, 2011 Order (Docket No. 85) denying the
appointment of <u>pro</u> <u>bono</u> counsel or whether he is filing a new
application for <u>pro</u> <u>bono</u> counsel.  Either way, Plaintiff's
request is DENIED.

"To prevail on a motion for reconsideration, the
movant must demonstrate 'an intervening change of controlling
law, the availability of new evidence, or the need to correct a
clear error or prevent manifest injustice.'"  <u>Catskill Dev.</u>,

---

[14] In addition to seeking appointment of <u>pro</u> <u>bono</u> counsel,
Plaintiff's motion also discusses Judge Wall's decisions to
close discovery and grant Defendant an extension to begin
dispositive motion practice.  However, Plaintiff does not appear
to be seeking relief of any kind.  The motion also attaches the
last page of a letter signed by Nelly Diez, a non-party, and two
fax coversheets which appear to be addressed to counsel.
Plaintiff has already been advised by the <u>pro</u> <u>se</u> office that
correspondence between parties is <u>not to be filed with the Court</u>
(<u>see</u> Docket No. 23), thus the Court will not review these
materials.

L.L.C. v. Park Place Entm't Corp., 154 F. Supp. 2d 696, 701 (S.D.N.Y. 2001) (quoting Doe v. N.Y. City Dep't of Soc. Servs., 709 F.2d 782, 789 (2d Cir. 1983)).  It is within the sound discretion of the Court whether to grant a motion for reconsideration.

Plaintiff argues that his circumstances have changed in that he is "now a criminal defendant for Building and Zoning violations that relate to the purchase of this property" and he "need[s] a lawyer to join these cases together."  (Mot. Reconsideration, Docket No. 88, at 1 ¶ 1.)  However, as the Court has previously explained multiple times, it lacks power to consolidate cases pending in other jurisdictions.  (See Order, July 26, 2010, Docket No. 31 (Judge Wall's denying consolidation with actions pending in state court and other federal district courts); Order, Dec. 30, 2010, Docket No. 56 (denying similar motion to consolidate for the same reasons articulated by Judge Wall).)  Thus, Plaintiff has failed to establish that the Court overlooked any controlling law or committed clear error in its May 2011 Order denying the appointment of counsel, and his motion for reconsideration is DENIED.

If Plaintiff's intention was to file a new motion for pro bono counsel, his motion is also DENIED.  Although the Court denied Plaintiff's original motion "without prejudice," it granted him leave to renew "once this case is ready for trial."

(Order, May 19, 2011, Docket No. 85, at 3.)  The case is not trial ready, and, as explained above, Plaintiff has not brought to the Court's attention any new facts or case law that would warrant the appointment of pro bono counsel.  Therefore, the Court will not appoint counsel at this time.

IV.  "Clarification" of Orders Denying Consolidation

        Also   pending   is   Plaintiff's   "Motion   for Clarification . . . as to why the Pro Se litigant is deemed as living in 'a fantasy' and why the plaintiff was refused to consolidate [sic] similar cases (for fraud and collusion, et. al.)."[15]  (Docket No. 98, at 1.)  This is not Plaintiff's first motion regarding consolidation.

    A.   Procedural Background

        Plaintiff first raised the issue of consolidation in a letter to Judge Wall, filed on June 9, 2010, in which he stated that "there are three (3) pending cases which I, Pro Se litigant, would like to transfer from different courts to consolidate with this case pursuant to Rule 42(a) of the Federal Rules of Civil Procedure."  (Docket No. 19.)  Plaintiff sought to consolidate the present case with cases pending in the New

---

[15] Plaintiff's "Motion for Clarification" also requests "all Court transcripts of all Court hearings to the docket in its fullest and complete dictation."  (Mot. for Clarification, Aug. 18, 2011, Docket No. 98, at 9.)  The Court, as explained above, denies this request.

York State Supreme Court in Nassau County and the United States District Court for the District of Columbia.[16]  On July 12, 2010, Judge Wall denied the request stating that "the requests for some of the relief sought, notably . . . [the] request to consolidate actions in other forums with this action, cannot be considered by this court, which has no authority to interfere in other courts' dockets in the manner sought by Diez."  (Docket No. 22.)

Notwithstanding Judge Wall's order, on July 20, 2010, Plaintiff formally moved to "intervene, transfer, and consolidate pending cases from different courts."  (Docket No. 30.)  This motion differed from his original letter only slightly in that he now sought to consolidate the present case with five other cases--the three described in his first letter, plus an additional two matters pending in New York State Supreme Court.  (Id. at 2-6.)  On July 26, 2010, Judge Wall denied the request stating:

> As the plaintiff has been advised both by previous order of this court and in court during a conference on July 22, 2010, the motion must be denied, because the court lacks the power to "consolidate" cases pending in other jurisdictions.

(Docket No. 31.)  Judge Wall further explained that "Federal Rule 42(a) allows a federal court to consolidate actions pending

---

[16] Plaintiff is not a party to either of the actions pending in the D.C. District Court.

before it, but does not allow it to take cases out of other jurisdictions in order to consolidate them." (Id.)

Despite Judge Wall's straightforward and clear explanation as to why his requests to consolidate were denied, on December 16, 2010, Plaintiff filed yet another "Motion to Consolidate (reconsideration due to same facts and law)." (Docket No. 52.) This motion was word-for-word identical to his prior motion[17] except he added two additional cases to consolidate--one in New York State Supreme Court and the other in the United States District Court for the Western District of Washington. (Id. at 6-7.) This Court again denied the motion "for the same reasons that Magistrate Judge Wall first articulated" (Order, Dec. 30, 2010, Docket No. 56, at 2)-- namely, that "this Court 'lacks jurisdiction to "consolidate" cases pending in other jurisdictions'" (id. at 1 (quoting Judge Wall's July 26, 2010 Order)). The Court warned Plaintiff that if he "files a similar 'motion to consolidate' in the future or any other duplicative motion, he may be liable for sanctions." (Id. at 2.)

Then, on January 10, 2011, Plaintiff filed an "Answer to Memorandum of Law in Opposition to Plaintiff's Motion to Consolidate." (Docket No. 61.) Although styled as a reply to

---

[17] Note that many of the paragraphs in his motions to consolidate are also repeated verbatim in his proposed amended complaints.

the Bank's opposition to his motion, it was filed more than ten
days after his motion was decided.  The Court assumed that
Plaintiff mailed this reply prior to receiving the Court's Order
denying consolidation and, therefore, chose not to sanction
Plaintiff at that time.

    B.    Pending Motion for "Clarification"

        In spite of all of the Court's prior decisions and
warnings, on August 18, 2011, Plaintiff filed the pending motion
for "clarification."  He seeks clarification of (i) "verbiage
'fantasy'" (Mot. for Clarification, Docket No. 98, at 8), and
(ii) "why [his] motions to consolidate was [sic] denied
repeatedly by Judge William D. Wall" (id.).

        Courts in this Circuit typically construe pro se
motions for "clarification" as motions for reconsideration.
See, e.g., Shabazz v. Pico, No. 93-CV-1424, 1999 WL 345596, at
*1 (S.D.N.Y. May 25, 1999), aff'd in part, vacated in part on
other grounds, 205 F.3d 1324 (2d Cir. 2000); Global One Commc'ns
World Holding B.V. v. Gaul, No. 01-CV-0254, at *1 (N.D.N.Y. May
7, 2007); Teasdale v. N.Y. City Fire Dep't, No. 08-CV-1684, 2011
WL 13898, at *1 (E.D.N.Y. Jan. 4, 2011).  As the Court explained
above, to prevail on a motion for reconsideration, Plaintiff
must show that the Court overlooked controlling law, that there
are new, previously unavailable facts, or that the Court

committed clear error.  Plaintiff has failed to demonstrate that any of these factors exist.

Rather Plaintiff makes clear that he is not seeking a reversal of any prior orders:  "This motion is simply a request for clarification and should be not considered otherwise unless judge opts on own [sic] judgment to grant the Pro Se plaintiff a favorable reversal of the prior orders and/or decision."  (Mot. for Clarification, Docket No. 98, at 2.)  He appears to be asking the Court for a definition of the word "fantasy"[18] and for the Court to simply repeat, yet again, why his motions to consolidate were denied.  The Court has already explained to Plaintiff, on three separate occasions in writing and on at least one prior occasion in person during a conference, why the Court lacks the power to consolidate cases pending in other jurisdictions.  (Docket Nos. 22, 31, 56.)  The Court will not do so again here.  Additionally, the Court will not define non-legal terms for the Plaintiff.

This is not the first time Plaintiff has asked the Court to explain or clarify a word or phrase that he did not

---

[18] Additionally, Plaintiff fails to identify when the phrase at issue was spoken or why the "clarification" is necessary.

understand.[19]   This is not a proper use of motion practice, and the Court will not entertain such requests in the future.

C.   <u>Sanctions</u>

Under the All-Writs Act, a federal court "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  The Act grants district courts the power, under certain circumstances, to "resort to restrictive measures that except from normally available procedures litigants who have abused litigation opportunities."  <u>In re Martin-Trigona</u>, 9 F.3d 226, 228 (2d Cir. 1993).  These measures include "barring a party from filing further appeals or motions

---

[19] <u>See</u>, <u>e.g.</u>, Pl. Ltr., July 20, 2010, Docket No. 34, at 3 ("Upon review of the Docket for CASE No. 09-CV-02390(JS)(WDW)--Federal Court in Islip, NY, Louis was puzzled why some files on the docket had '(Court only)' written under the category: 'Docket Text' which was what Pro Se office attorney indicated could not be done at Louis Diez's prior request.  Please explain the reason behind this . . . ."); Pl. Ltr., November 1, 2010, Docket No. 41, at 4 ("By the way, the docket states 'case ineligible for arbitration (Bollbach, Jean) Entered 06-05-2009' ... why is it ineligible for arbitration (which I do not want in any case anyway)?" (ellipsis in original)); Pl. Reply in Support of Mot. to Amend, January 10, 2011, Docket No. 62, at 3 ("Plaintiff wants elaboration on why his amended complaint is 'proposed' and 'futile' . . . .  Plaintiff wants to know why the opposing law firm uses unrelated cases to support his client's position to try to dismiss the Plaintiff's motions while Plaintiff cannot use similar cases to support his position."); <u>cf.</u>, <u>e.g.</u>, Pl. Opp. to Mot. to Dismiss, January 10, 2011, Docket 60, at 2 ("Why does the opposing law firm keep trying to dismiss Plaintiff's complaint for not being short in nature?"); Pl. Ltr, May 16, 2011, Docket No. 84 ("These letters were addressed to Judge Seybert, so why are these letters addressed to Judge Wall?").

without the leave of this Court," Tibbetts v. Levin, 288 Fed. Appx. 743, 745 (2d Cir. 2008) (citing Gyadu v. Hartford Ins. Co., 197 F.3d 590, 592 (2d Cir. 1999)), and "enjoin[ing] a vexatious litigant from filing future motions" altogether, Jones v. City of Buffalo, 867 F. Supp. 1155, 1169 (W.D.N.Y. 1994) (citing In re Hartford Textile Corp., 681 F.2d 895, 897 (2d Cir. 1982), cert. denied, 459 U.S. 1206, 103 S. Ct. 1195, 75 L. Ed. 2d 439 (1983)). Prior to imposing such an injunction or leave-to-file sanction, the Court must provide Plaintiff with notice and an opportunity to be heard. See Viola v. United States, 307 Fed. Appx. 539, 539 (2d Cir. 2009); Moates v. Barkley, 147 F.3d 207, 208 (2d Cir. 1998).

Thus, Plaintiff is ORDERED to show cause within thirty [30] days of the date of this Order, why leave-to-file sanctions should not be imposed. The Plaintiff was warned that he "must respect this Court's orders, and not file duplicative, frivolous motions," and that if he "files a similar 'motion to consolidate' in the future, or any other duplicative motion, he may be liable for sanctions." (Opinion, Dec. 30, 2010, Docket 56, at 2.) Although, as explained above, Plaintiff asserts that "[t]his motion is simply a request for clarification and should not be considered otherwise," it nonetheless includes a verbatim copy of his December 2010 motion to consolidate and states that the "judge [may] opt on own [sic] judgment to grant the Pro Se

plaintiff a favorable reversal of prior orders and/or decisions." (Mot. for Clarification, Docket No. 98, at 2-8.) This Court, and according to Plaintiff numerous other courts,[20] have exhaustively and repeatedly explained why his cases cannot be consolidated. He is now requesting that it be explained to him yet another time. His request is duplicative, frivolous and in direct violation of the Court's prior order. If Plaintiff fails to explain why sanctions are not appropriate, the Court will issue an Order barring him from filing any future motions without leave of Court.

V.   Objections to Judge Wall's Order

On August 26, 2011, Plaintiff filed a "Motion to Argue Judge's Decision to Close and Deny All of Plaintiff's Discovery Demands" (Docket No. 99) appealing Judge Wall's March 3, 2011 Minute Order (Docket No. 71): (i) closing discovery and (ii) denying his motion to compel. "A party may serve and file objections to [a magistrate judge's order on a nondispositive matter] within 14 days after being served with a copy." FED. R. CIV. P. 72(a). Here, Plaintiff waited almost six months to object to Judge Wall's order--far outside the time prescribed

---

[20] See Pl. Ans. to Notice of Dep., January 10, 2011, Docket No. 63, at 3 ("Why are the state supreme courts disposing my cases without my authorization and not allowing me to consolidate to save taxpayer's money and time?"); Mot. for Clarification, Docket No. 98, at 1 ("Plaintiff also wants to know why the other Judge, at the Supreme Court located in Washington, D.C., denied the motions to consolidate and/or intervene . . . .").

under the Federal Rules.   Therefore, Plaintiff's objections to Judge Wall's Order OVERRULED as untimely, and his motion to extend discovery and compel disclosure is DENIED.

VI.   Bank's Motion for Summary Judgment

The Court RESERVES JUDGMENT on the Bank's motion for summary judgment.   The Court will address the Bank's motion after the time for Plaintiff to move to amend the Complaint has expired.

CONCLUSION

For the foregoing reasons, the Court:

1.   DENIES WITHOUT PREJUDICE Plaintiff's motions to amend his complaint (Docket Nos. 36, 51), and GRANTS Plaintiff leave to file a new motion to amend within thirty [30] days of the date of this Order;

2.   DENIES Plaintiff's request for free copies of all pretrial and trial transcripts;

3.   DENIES Plaintiff's request for pro bono counsel;

4.   DENIES Plaintiff's motion for "clarification," and ORDERS Plaintiff to show cause, within thirty [30] days of the date of this Order, why leave-to-file sanctions should not be imposed;

5.   OVERRULES Plaintiff's objections to Judge Wall's March 3, 2011 Minute Order; and

6.    RESERVES    JUDGMENT    on    Defendant's    motion    for summary judgment.

Defendant is ORDERED to serve a copy of this Order on the <u>pro</u> <u>se</u> Plaintiff and file proof of service with the Court within seven days of the date of this Order.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:      September   21  , 2011
            Central Islip, New York

25